# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **ROBIN G. VANZANT,** ) | |
|     Plaintiff ) | |
| ) | |
| **v.** ) | Civil Action No. 2:07cv00069 |
| ) | |
| ) | **MEMORANDUM OPINION** |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of Social Security,** ) | By: Pamela Meade Sargent |
|     Defendant ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

## I. Background and Standard of Review

The plaintiff, Robin G. Vanzant, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2008). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

Case 2:07-cv-00069-PMS   Document 13   Filed 08/14/08   Page 1 of 19   Pageid#: 58

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Vanzant protectively filed her application for DIB on July 14, 2004, alleging disability as of June 1, 2001,[1] due to back problems, depression and headaches. (Record, ("R."), at 47-51, 56.) The claim was denied initially and upon reconsideration. (R. at 32-34, 37-40.) Vanzant then requested a hearing before an administrative law judge, ("ALJ"). (R. at 41.) The ALJ held a hearing on December 13, 2005, at which Vanzant was represented by counsel. (R. at 630-56.)

By decision dated February 6, 2006, the ALJ denied Vanzant's claim. (R. at 16-24.) The ALJ found that Vanzant met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2004.[2] (R. at 23.) The ALJ also found that Vanzant had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 23.) The ALJ found that the medical evidence established

---

[1]Although Vanzant alleged disability as of June 1, 2001, she testified that she last worked in May of 1999. (R. at 634.) Vanzant testified that she alleged disability as of June 1, 2001, because the onset of the alleged disability occurred after the birth of her child on April 24, 2001. (R. at 634.)

[2]In order to be entitled to DIB, Vanzant must prove that her disability began on or prior to her date last insured, December 31, 2004. *See* 42 U.S.C.A. § 423(c)(1)(B) (West 2003 & Supp. 2008).

-2-

that Vanzant suffered from severe impairments, namely degenerative disc disease, anxiety and depression, but he found that Vanzant did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21, 23.) The ALJ found that the allegations regarding Vanzant's limitations were not totally credible. (R. at 23.) The ALJ also found that Vanzant had the residual functional capacity to perform simple, unskilled, low-stress, light work[3] that did not require overhead use of her arms. (R. at 24.) Therefore, the ALJ found that Vanzant was unable to perform any of her past relevant work. (R. at 24.) Based on Vanzant's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed that Vanzant could perform, including jobs as a sales clerk, a cashier, an information clerk, an order clerk, a hand packer and a sorter. (R. at 24.) Thus, the ALJ found that Vanzant was not under a disability as defined under the Act at any time through the date of his decision. (R. at 24.) *See* 20 C.F.R. § 404.1520(g) (2008).

After the ALJ issued his decision, Vanzant pursued her administrative appeals, (R. at 12), but the Appeals Council denied her request for review. (R. at 5-9.) Vanzant then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2008). This case is before the court on Vanzant's motion for summary judgment filed May 8, 2008, and the Commissioner's motion for summary judgment filed June 2, 2008.

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light works, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2008).

## II. Facts

Vanzant was born in 1971, which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c). (R. at 47, 633.) She has a high school education, certified nurse's assistant training,[4] and past relevant work experience as a certified nurse's assistant. (R. at 57, 61, 633-35.)

Vanzant testified that her neck problems prevented her from raising her arms up over her neck and from bending her neck back. (R. at 637.) Vanzant testified that sitting for long durations caused her back pain. (R. at 638-39.) She also testified that she took pain medication, which helped her somewhat . (R. at 640.) Vanzant testified that she suffered side effects from some of her medications, which included constipation, bloating and flatulency. (R. at 641.) She also testified that she had difficulty kneeling and squatting. (R. at 641.) Vanzant testified that she was able to stand for up to 15 minutes without interruption and sit for approximately 30 minutes without interruption. (R. at 642.) She also testified that she suffered from headaches. (R. at 643.) Vanzant testified that she experienced tightness in her chest, fear, rapid heart rate, hyperventilation and shaking. (R. at 645.) She also testified that she was anxious all of the time. (R. at 645.) Vanzant testified that she suffered from panic attacks. (R. at 646.)

Donna Bardsley, a vocational expert, was present and testified at Vanzant's hearing. (R. at 653-55.) Bardsley testified that Vanzant's past work as a certified

---

[4]Vanzant testified at her hearing that she also possessed a basic certificate in computers, which was not mentioned in her disability report. (R. at 633.)

-4-

nurse's assistant was considered medium[5] and semiskilled work. (R. at 653.) Bardsley was asked to consider an individual of Vanzant's age, education and work history who had the residual functional capacity to perform simple, unskilled, low-stress, light work that did not require her to use her arms overhead. (R. at 653-54.) Bardsley testified that there were jobs available in significant numbers that such an individual could perform, including jobs as a salesclerk, a cashier, an information clerk, an order clerk, a hand packager and a sorter. (R. at 654.) Bardsley also testified that if the individual was limited as indicated by the assessment of Dr. Turnbull, the jobs previously mentioned would be eliminated. (R. at 439-40, 654.) Bardsley testified that if an individual experienced one or two episodes of decompensation for extended periods on the job, to the extent that it would cause the individual to "miss more than a day a month on a regular basis," then the jobs previously mentioned would be eliminated. (R. at 655.)

In rendering his decision, the ALJ reviewed medical records from Dr. Larry T. Wilson, M.D.; Dr. James M. Turnbull, M.D.; Dr. John D. Creasy, M.D.; Dr. Donald R. Lovelace, M.D.; Dr. Sean P. White, M.D.; Dr. Jack R. Crowder, M.D.; Dr. Lidia Kao, M.D.; Dr. Ronald C. Donaldson, M.D.; Holston Valley Hospital and Medical Center; Mitzi D. Musick, ANP; Holston Medical Group; Kathy J. Miller, M.Ed., a licensed psychological examiner; Robert S. Spangler, Ed.D., a licensed psychologist; Julie Jennings, Ph.D., a state agency psychologist; and R.J. Milan Jr., Ph.D., a state agency psychologist. Vanzant's attorney also submitted medical records from Dr. Wilson; Brookside Chiropractic; Broadwater Drugs; Dr. Turnbull; Dr. Rebekah C. Austin, M.D.; 1st Step Rehab; and Holston Counseling Services to the Appeals

---

[5]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2008).

-5-

Council.[6]

On March 6, 2003, Vanzant was seen by Dr. Larry T. Wilson, M.D. (R. at 272-73.) Vanzant complained of headaches, back pain, stomach pain and inability to breathe. (R. at 273.) Dr. Wilson reported that Vanzant presented sobbing uncontrollably and was in an almost infant-like hysteria. (R. at 273.) Vanzant reported that she had been crying uncontrollably since that morning. (R. at 273.) Dr. Wilson reported that his staff found Vanzant slumped down on the bathroom floor crying. (R. at 273.) Vanzant was diagnosed with anxiety and a panic attack. (R. at 272.) On April 28, 2003, Vanzant complained of experiencing several panic attacks and anxiety. (R. at 264.) Dr. Wilson reported that Vanzant had significant improvement in her overall affect. (R. at 264.) On May 19, 2003, Dr. Wilson reported that Vanzant had difficulty adjusting to everyday life issues. (R. at 259.)

On July 28, 2003, Vanzant reported that she would be going on vacation and requested an early refill of headache medication as a precautionary measure. (R. at 256.) Dr. Wilson reported that Vanzant's affect was much improved. (R. at 256.) Dr. Wilson suspected that Vanzant had a borderline personality disorder and/or an addictive personality disorder. (R. at 256.) Dr. Wilson noted that Vanzant was remotely tearful and wished to terminate the use of Ezol due to possible side affects. (R. at 256.)

---

[6]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-9), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

On November 13, 2003, Dr. Wilson noted that Vanzant was very tearful. (R. at 249.) Vanzant complained of family issues and insomnia. (R. at 249.) He suspected that Vanzant suffered from some type of somatization disorder. (R. at 249.) Dr. Wilson reported that Vanzant was not receptive to the idea of reentering the work force. (R. 249.) Vanzant reported that she had discontinued some of her medication. (R. at 249.) Dr. Wilson reported that it was difficult to provide Vanzant with optimal care because she was not always compliant with medical recommendations. (R. at 249.)

On November 21, 2003, Dr. Wilson reported that Vanzant was much better. (R. at 248.) Dr. Wilson reported that he had consulted Vanzant's psychiatrist, Dr. James M. Turnbull, M.D., and both agreed that Vanzant had a histrionic personality. (R. at 248.) Both also agreed that Vanzant required intense counseling to manage her histrionic personality. (R. at 248.) On December 12, 2003, Vanzant requested an increase in her pain medication prescription. (R. at 243-44.) Dr. Wilson related that he was uncomfortable with the amount of narcotics that Vanzant was using. (R. at 243.) Dr. Wilson indicated that he would dismiss Vanzant from his practice should she request early refills or additional pain medication in the future. (R. at 243.) Dr. Wilson also noted that the amount of pain alleged by Vanzant did not correlate with her MRI results. (R. at 243.) On February 23, 2004, Dr. Wilson reported that anxiety was still a problem, but that Vanzant was coping better. (R. at 239.) On May 21, 2004, Dr. Wilson again noted that Vanzant's somatic complaints did not match her physical examination. (R. at 232.)

On July 1, 2004, Dr. Wilson reported that a somatization disorder was a very distinct and strong possibility. (R. at 225.) Dr. Wilson also reported that Vanzant had

acquired additional narcotics, Lortab and Oxycontin, from her dentist without his knowledge. (R. at 225.) On July 15, 2004, Dr. Wilson noted that Vanzant's medication usage would be closely monitored for potential abuse. (R. at 217.) He reported that Vanzant exhibited strong signs and symptoms of a borderline personality disorder and somatization disorder. (R. at 217.) He noted that there had been questionable and troubling concerns regarding Vanzant's use of pain medications. (R. at 217.) On November 8, 2004, Vanzant had a normal affect and demeanor. (R. at 208.) She was alert and oriented. (R. at 208.) She requested an early refill on her medication. (R. at 209.) Dr. Wilson reported that he was tiring of Vanzant's persistent complaints of early headache and pain refill medication. (R. at 209.) He noted that Vanzant had some underlying psychiatric issues. (R. at 209.) On December 14, 2004, Dr. Wilson reported that Vanzant had a normal affect and demeanor.[7] (R. at 465-66.) On July 18, 2005, Vanzant complained of congestion and sore throat. (R. at 451-52.) Dr. Wilson reported that Vanzant was "sleepy-appearing." (R. at 451.) He reported that Vanzant had slurred speech. (R. at 451.) Vanzant's gait was unsteady, and her thought processes appeared confused. (R. at 451.) When he expressed concern about her ability to drive safely and suggested that she call a driver, Vanzant became defensive and agitated and announced that she was leaving. (R. at 452.)

On April 8, 2003, Vanzant saw Dr. James M. Turnbull, M.D., a psychiatrist. (R. at 354-56.) Dr. Turnbull indicated that Vanzant exhibited mild to moderate depression and cried frequently throughout the interview. (R. at 354.) Vanzant's affect was

---

[7]Dr. Wilson reported that Vanzant had a normal affect and demeanor on the following dates: January 10, 2005; February 9, 2005; April 20, 2005; June 7, 2005; February 1, 2006; April 7, 2006; and May 8, 2006. (R. at 453, 455, 461-63, 525, 532, 534.)

described as labile. (R. at 354.) Dr. Turnbull also indicated that Vanzant's thought process was logical, coherent and goal directed with no evidence of a thought disorder. (R. at 354.) Dr. Turnbull assessed Vanzant's Global Assessment of Functioning score, ("GAF"), at 55.[8] (R. at 354.) He diagnosed mixed anxiety and depression. (R. at 355.) On May 23, 2003, Vanzant reported that she was doing much better. (R. at 352.) She reported that her panic attacks had "all but disappeared." (R. at 352.) Dr. Turnbull reported that there was no evidence of depression or elation. (R. at 352.) On August 22, 2003, and December 5, 2003, Dr. Turnbull again reported that Vanzant showed no evidence of depression or elation. (R. at 349-50.) Her thinking was logical, coherent and goal-directed with no evidence of a thought disorder. (R. at 349-50.) On March 5, 2004, Dr. Turnbull reported that Vanzant showed no signs of depression or elation. (R. at 357.) Her thinking was logical, coherent and goal-directed with no evidence of a thought disorder. (R. at 357.) He diagnosed somatoform disorder. (R. at 357.)

On June 18, 2004, Dr. Turnbull reported that Vanzant was dysphoric and close to tears. (R. at 348.) He also reported that Vanzant rambled and was quite histrionic. (R. at 348.) Vanzant reported that she had terminated her Paxil medication due to weight gain and started Effexor, which she claimed caused insomnia. (R. at 348.) Dr. Turnbull reported that Vanzant did not exhibit any evidence of a thought disorder. (R. at 348.) Dr. Turnbull again diagnosed somatoform pain disorder. (R. at 348.) He assessed a GAF score of 55. (R. at 348.) On February 18, 2005, Dr. Turnbull reported

---

[8]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

that Vanzant was emotionally labile. (R. at 444, 564.) Vanzant complained of difficulty concentrating. (R. at 444, 564.) Dr. Turnbull indicated that Vanzant was dysphoric and moderately depressed without any evidence of a thought disorder. (R. at 444, 564.)

On February 18, 2005, Dr. Turnbull completed a mental assessment indicating that Vanzant had a limited, but satisfactory, ability to maintain personal appearance. (R. at 439-40.) He indicated that Vanzant had a seriously limited, but not precluded, ability to follow work rules, to interact with supervisors, to function independently and to relate predictably in social situations. (R. at 439-40.) Dr. Turnbull indicated that Vanzant had no useful ability to relate to co-workers, to deal with the public, to use judgment, to deal with work stresses, to maintain attention and concentration, to understand, remember and carry out complex, detailed and simple job instructions and to demonstrate reliability. (R. at 439-40.)

On September 1, 2005, Vanzant was dysphoric and moderately depressed. (R. at 442, 561.) Dr. Turnbull changed her medications. (R. at 442, 561.) On September 22, 2005, Dr. Turnbull reported no evidence of depression or elation. (R. at 441, 560.) Vanzant's thinking was logical, coherent and goal-directed with no evidence of a thought disorder. (R. at 441, 560.) On March 31, 2006, Vanzant reported that she was very upset by her disability rejection. (R. at 557.) Dr. Turnbull reported that Vanzant was dysphoric and moderately depressed. (R. at 557.) Vanzant's thought process was logical, coherent and goal-oriented without any evidence of a thought disorder. (R. at 557.) Vanzant exhibited similar conditions during her office visit on June 30, 2006. (R. at 556.)

On June 30, 2006, Dr. Turnbull completed another mental assessment indicating

that Vanzant had no useful ability to make occupational, performance, personal or social adjustments. (R. at 568-69.) Dr. Turnbull reported extreme chronic depression, frequent crying spells, feeling like escaping from her responsibilities at home and inability to concentrate, as the clinical findings in support of his assessment. (R. at 568.) He indicated that Vanzant had a seriously limited, but not precluded, ability to maintain personal appearance. (R. at 569.)

On June 21, 2004, Vanzant was involuntary admitted to Woodridge Hospital. (R. at 393-96, 401-05.) Vanzant was under the care of Dr. Stephen M. Smith, D.O. (R. at 401.) Vanzant appeared to be under the influence of sedating medication. (R. at 393.) Upon admission, Vanzant's GAF score was assessed at 25.[9] (R. at 402.) Vanzant was kept on level III and underwent a detoxification protocol. (R. at 401.) Vanzant reported insomnia, but her husband similarly reported incidents where she was found asleep on the floor of their home with their three-year-old son running around. (R. at 401.) Dr. Smith also noted that Vanzant exhibited euthymic mood with logical and goal-directed thoughts. (R. at 402.) Vanzant was diagnosed with a depressive disorder and anxiety disorder, not otherwise specified. (R. at 401.) Her GAF score upon discharge was assessed at 65.[10] (R. at 402.)

On September 21, 2004, Kathy J. Miller, M.Ed., a licensed psychological

---

[9] A GAF of 21-30 indicates that the individual's behavior is considerably influenced by delusions of hallucinations or serious impairment in communication or judgment or an inability to function in almost all areas. *See* DSM-IV at 32.

[10] A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

-11-

examiner, and Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Vanzant at the request of Disability Determination Services. (R. at 406-11.) Miller and Spangler reported that Vanzant was cooperative, socially confident and comfortable during the evaluation. (R. at 406.) Vanzant's facial expressions and voice inflections were somewhat exaggerated. (R. at 408.) They reported that Vanzant gave excessive details concerning unrelated subjects. (R. at 408.) Vanzant continually needed redirection and exhibited erratic concentration. (R. at 406, 410.) They diagnosed an anxiety disorder, not otherwise specified, in fair pharmacological control, and a depressive disorder, not otherwise specified. (R. at 410.) Miller and Spangler noted the need to rule out the possibility of a somatization disorder. (R. at 410.) Miller and Spangler also found that Vanzant possessed a personality disorder with histrionic features and moderate problems with concentration. (R. at 410.) Miller and Spangler assessed a GAF score of 60. (R. at 410.) Miller and Spangler found that Vanzant's ability to understand and remember did not appear to be significantly limited. (R. at 410.) Vanzant's ability to sustain concentration and persistence was moderately limited. (R. at 410.) Her ability to adapt was limited by her personality disorder with histrionic features, depression and anxiety disorder. (R. at 411.) They also found that Vanzant's social interaction was limited by mild isolative behavior secondary to depression. (R. at 410.)

On September 27, 2004, Julie Jennings, Ph.D., a state agency psychologist, completed a Mental Residual Functional Capacity Assessment, indicating that Vanzant was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to

complete a normal work day and workweek without interruptions from psychologically based symptoms, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors and to set realistic goals or make plans independently of others. (R. at 420-22.) Jennings reported that Vanzant could perform simple, unskilled, nonstressful work. (R. at 422.) This assessment was affirmed by R.J. Milan Jr., Ph.D., another state agency psychologists, on January 28, 2005. (R. at 422.)

That same day, Jennings also completed a Psychiatric Review Technique form, ("PRTF"), indicating that Vanzant had an affective disorder and anxiety-related disorder. (R. at 424-37.) Jennings indicated that Vanzant had moderate restrictions on her daily living activities, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 434.) Jennings also reported that Vanzant experienced one or two episodes of decompensation, each of extended duration. (R. at 434.) State agency psychologist Milan also affirmed this assessment on January 28, 2005. (R. at 424.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds

-13-

conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2008).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2008); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated February 6, 2006, the ALJ denied Vanzant's claim. (R. at 16-24.) The ALJ found that the medical evidence established that Vanzant suffered from severe impairments, namely degenerative disc disease, anxiety and depression, but he found that Vanzant did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21, 23.) The ALJ also found that Vanzant had the residual functional capacity to perform simple, unskilled, low-stress, light work that did not require overhead use of the arms. (R. at 24.) Therefore, the ALJ found that Vanzant was unable to perform any of her past relevant work. (R. at 24.) Based on Vanzant's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed that Vanzant could perform, including jobs as a sales clerk, a cashier, an information clerk, an order clerk, a hand packer and a sorter. (R. at 24.) Thus, the ALJ found that Vanzant was not under a disability as

defined under the Act at any time through the date of his decision. (R. at 24.) *See* 20 C.F.R. § 404.1520(g).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

In her brief, Vanzant argues that the ALJ's decision is not based upon substantial evidence of record. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-15.) In particular, Vanzant argues that the ALJ erred in his evaluation of her mental impairments. (Plaintiff's Brief at 7-15.) Vanzant

-15-

also argues that the ALJ erred in rejecting the opinion of Dr. Turnbull, her treating psychiatrist. (Plaintiff's Brief at 7-15.) Vanzant does not challenge the ALJ's findings as to her physical impairments or her physical residual functional capacity.

The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983). The ALJ must generally give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2) (2008). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

The ALJ found that Vanzant had severe mental impairments that limited her to simple, unskilled, low-stress light work. (R. at 19-22.) Based on my review of the record, I find that substantial evidence exists to support this finding. State agency psychologists Jennings and Milan opined that Vanzant could perform simple, unskilled, nonstressful work despite her symptoms of depression and anxiety. (R. at 422.) While Vanzant argues that the opinions of Jennings and Milan support a finding of disability because they found that she had experienced one or two episodes of decompensation, I find that this argument is without merit. (Plaintiff's Brief at 13.) Vanzant argues that the vocational expert testified that an individual with one or two episodes of decompensation would not be able to work. (Plaintiff's Brief at 13.) The

-16-

vocational expert testified that an individual who had such episodes so frequently that they would be absent from work one or two times each month would be unable to maintain a job. (R. at 655.) Jennings and Milan found that Vanzant had experienced a total of only one or two such episodes. (R. at 434.)

Spangler and Miller opined that Vanzant had the ability to understand and remember, a moderately limited ability to concentrate and persist, a limited ability to adapt and a mildly limited ability to interact socially. (R. at 410.) Furthermore, Spangler and Miller assessed a GAF score of 60, indicating only moderate, bordering mild, symptoms or difficulty functioning. (R. at 410.) Upon discharge from Woodridge Hospital, Vanzant had a GAF score of 65, indicating only mild symptoms. (R. at 402.) Although Vanzant had a GAF score of 25 upon admission, she was noted to be under the sedative effects of misused medication. (R. at 225, 393, 395, 401-02.) After monitored withdrawal and treatment, Vanzant was functioning well and had only mild limitations. (R. at 401-02.)

The only contradictory opinion of record is the assessment of Dr. Turnbull offered in February 2005. (R. at 439-40.) The ALJ found that Dr. Turnbull's assessment was not entitled to significant weight because it was inconsistent with the other substantial evidence of record and his own findings on examination. (R. at 21.) The ALJ is not required to give Dr. Turnbull's assessment any greater weight because it was not supported by the objective clinical findings of record. *See* 20 C.F.R. §404.1527(d)(2). Dr. Turnbull's records contain minimal clinical findings. Vanzant consistently had logical, coherent and goal-directed thinking on examination. (R. at 357, 441-44.) She generally had a mildly depressed to normal mood and affect. (R. at

-17-

346, 349-50, 352, 357, 441, 443.) Vanzant was dysphoric or moderately depressed only when she was not taking her antidepressant medication as prescribed or when her medications needed to be changed. (R. at 348, 354-55, 442.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). On discharge from Woodridge Hospital, Vanzant had normal attention, concentration and judgment, with a congruent mood and logical and goal-directed thought processes. (R. at 402.) In addition, Vanzant reported in August 2004, only four months prior to her date last insured, that she could follow written instructions "good" and oral instructions "pretty good." (R. at 73.) She reported that her impairment had not had any effect on her ability to understand or follow instructions. (R. at 73.)

Based on my review of the record as outlined above, I find that the ALJ properly rejected the assessment of Dr. Turnbull when determining Vanzant's mental residual functional capacity. I also find that substantial evidence exists to support the ALJ's finding that Vanzant had the residual functional capacity to perform simple, unskilled, low-stress light work. (R. at 24.)

## IV. Conclusion

For the foregoing reasons, Vanzant's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED: This 14th day of August 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE